**STATE of NEVADA ex rel. Hugh A. SHAMBERGER, State Engineer, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16389.

United States Court of Appeals Ninth Circuit.

May 29, 1960.

Roger D. Foley, Atty. Gen., W. T. Mathews, Reno, Nev., William N. Dunseath, Sp. Asst. Atty. Gen., for appellant.

Perry W. Morton, Asst. Atty. Gen., Howard W. Babcock, U. S. Atty., Reno, Nev., David R. Warner, Charles G. Luellman, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Nevada seeks a declaration that the United States may not make use of underground waters developed by wells located on the Hawthorne Naval Ammunition Depot without applying therefor pursuant to state law. Nevada takes this appeal from judgment of the District Court dismissing its complaint.

Many issues are raised by the appeal. The ultimate question upon which Nevada desires our expression is: which sovereign entity, the United States or a state of the Union, is vested with control over the appropriation to beneficial consumptive use by the United States of non-navigable waters, including underground waters, within the boundaries of a state? We find, however, that our disposition of the matter must turn upon the first point raised by the United States: that it has not consented to the bringing of this suit and that the suit is therefore barred by the sovereign immunity of the defendant.

Nevada contends that congressional consent to suit has been given by 43 U.S.C. § 666(a).[1] Our construction of that section, in the light of its legislative history, is that it cannot be made to apply to the case at bar.

The Hawthorne Naval Ammunition Depot, located in Mineral County, Nevada, is maintained by the Department of the Navy and constitutes a major installation in the defense program of that department. The land embraced within the depot, some 200,000 acres, was withdrawn from entry by various executive orders issued from 1926 to 1935. In 1935, the Nevada legislature ceded to the United States all jurisdiction over the lands comprising the depot, reserving only the power to tax private property situated therein and to serve process therein. Chapter 144, Statutes of Nevada, 1935.

In 1939, the legislature of Nevada enacted a comprehensive underground water law providing that those who would appropriate such waters to beneficial use must make application therefor to the state engineer and thereafter make proof

---

1. "Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit."

of such beneficial use. Nev.Rev.Stat. 534.020–534.190.

From 1942 to 1945, the United States drilled and put into operation six wells, all located within the boundaries of the depot. They are needed to provide a water supply for the depot. It is stipulated that the development and operation of the wells "does not interfere and has at no time interfered with any vested right of any person."

In 1949 the commanding officer of the depot applied for a permit to appropriate the waters developed by the wells. The application was approved by the state engineer. Further steps were taken by the commanding officer until all that remained to be done prior to the securing of the permit was filing of proof that the waters had been put to beneficial use. After securing three extensions of time for the making of such proof, the commanding officer advised the state engineer that the United States was abandoning its application upon the theory that the waters were the property of the United States and were not public waters under the control of the state.

This suit was then brought by the state against the United States to secure a decree establishing that the underground waters are the property of the State of Nevada, subject to the right of appropriation by the United States upon compliance with the laws of the state.

In support of its contention that consent to suit has been granted, Nevada emphasizes that portion of § 666(a) which provides that the United States shall be "deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty."

The answer is that this is not a suit "for the adjudication [or administration] of rights to the use of waters of a river system or other source" within the meaning of the section. The suit to which the section refers is one to establish the relative rights of users of the waters of a stream or other common source: one to settle disputes between such water users with respect to their rights among themselves.

The nature of the suit contemplated by the section is made abundantly clear by the legislative history of the act. Senate Reports No. 755, 82nd Congress, 1st Session; Congressional Record, Volume 97, Part 10, pages 12947–12948. Congress was concerned with cases in which the United States, possessing or in the process of acquiring water rights, was a necessary party to the adjudication of the extent or priority of water rights.

Such is not the case before us. Nevada is not here seeking, either for herself or for others, the judicial establishment of any particular *usufructuary* right. See 1 Wiel, Water Rights, § 15 (3rd Edition, 1911). Rather, she seeks a declaration of her sovereign, proprietary right to the corpus or control of waters in general.

Dismissal of the complaint of the State of Nevada was then proper.

Affirmed.