**UNITED STATES of America,**
**Plaintiff,**

v.

**George W. HENNEN, State Engineer for the State of Nevada, et al.,**
**Defendants.**

**Civ. No. LV-927.**

United States District Court
D. Nevada.

May 2, 1968.

Joseph L. Ward, U. S. Atty., Las Vegas, Nev., Martin Green, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harvey Dickerson, Atty. Gen. for State of Nevada, Carson City, Nev., Singleton, De Lanoy & Jemison, Las Vegas, Nev., Gray, Horton & Hill, Reno, Nev., for defendants.

OPINION

ROGER D. FOLEY, District Judge.

This action has been submitted for decision to the Court upon cross-motions for summary judgment, pursuant to Rule 56, F.R.Civ.P., the parties having presented points and authorities and evidence in support of their respective motions.

In 1919, a proceeding was initiated under what is now codified as Chapter 533 of Nevada Revised Statutes, for the determination of relative rights in and to the waters of Pahranagat Lake and its tributaries in Lincoln County, Nevada. In accordance with said statute, the State Engineer made an investigation of the stream system and took proofs of the various claims thereto. From the proofs and evidence taken or given before him, the State Engineer prepared a preliminary Order of Determination, establishing the several rights of claimants to waters of the stream system. After hearing objections to said preliminary Order of Determination, and in accordance with said statute, the State Engineer prepared an Order of Determination, and on March 10, 1927, filed it with the District Court of Nevada, in and for Lincoln County, and thus, commenced Case No. 3160[1] in said State Court, entitled "In the Matter of the Determination of the Relative Rights in and to Waters of Pahranagat Lake and its Tributaries in Lincoln County, State of Nevada".

Paragraphs 6 and 7 of the Order of Determination read as follows:

"6. That in addition to water used during the irrigating season each user shall be entitled to divert sufficient water for stock and domestic purposes, the amount diverted not to exceed a flow of 0.025 of a cubic foot per second at each point of use, such diversion to be made during the nonirrigating season, subject to the provisions of paragraph 3. The point of measurement of stock water shall be at the same point as selected and approved by the State Engineer for the measurement of irrigation water.

"7. That in addition to the water allowed for irrigation, stock and domestic purposes, each user in his proper proportion and priority shall also be entitled to an economical bimonthly diversion of water for washing mineral salts from his land; such diversion to be permitted from October 1 to March 14 of each year in accordance with custom long prevailing."

The State Engineer procured an order of said State Court, setting the hearing of said Order of Determination for June 21, 1927, and duly noticed all claimants according to said statute. On June 21, 1927, certain exceptions having been taken and evidence received, and the Court having made certain corrections

1. This Court takes judicial notice of all of the files and records in said Case No. 3160.

not here involved, a minute order was entered directing that a decree be entered in accordance with the Order of Determination of the State Engineer.[2] The State Engineer prepared and the Court entered a formal decree on October 14, 1929, which substantially followed the Order of Determination except that paragraphs 6 and 7 of the Order of Determination were omitted from the decree.

One of the claimants whose rights were adjudicated in said suit was Gardner Ranch Company. In August, 1963, Plaintiff, United States of America, acquired lands and water rights formerly owned by the Gardner Ranch Company. In March, 1964, most, if not all, of the water users, or their successors in interest, along the stream system filed a motion in said Case No. 3160 to correct the decree nunc pro tunc as of the date of its entry, October 14, 1929, pursuant to Rule 60, Nevada Rules of Civil Procedure.[3] The United States of America was served with said motion as provided in Title 43, U.S.C. § 666.[4] At the hearing

2. The minutes of the Court read in full as follows:

"Court convened pursuant to rescess June 21st A.D. 1927. Wm. F. Orr District Judge presiding and all other officers of the Court present.

"IN THE MATTER OF THE DETERMINATION AND ADJUDICATION OF WATERS OF PAHARANAGAT LAKE AND TRIBUTARIES

"The above entitled matter came on regularly for hearing before the Court June 21, A.D. 1927. The STate Engineer was in Court ready to proceed with said Hearing and for the submission of such proofs as was necessary. Will Schofield and Merle Scholfield were in Court having filed exceptions to the Order of the State Engineer so *so* filed.

Proof of service admitted and filed.

Affidavit of Publication admitted and filed.

The Court ordered that the correction by the State Engineer of the Preliminary Order of Determination. Page 5 line 7. Claimant W. H. Sharp be allowed. It was further ordered that the correction by the State Engineer of the *of the* Order of Determination, page 6 line 13, Claimant W. H. Sharp be allowed. The Court having heard all of the evidence, ORDERED that the protests be denied. IT WAS FURTHER ORDERED by the Court that a Decree be entered affirming the Determination and Adjudication of the Waters of Paharanagat Lake and Tributaries as made by the State Engineer."

3. In Alamo Irrigation Co. v. United States, 1965, 81 Nev. 390, at 394, 404 P.2d 5, at 7, the Court states:

"NRCP 60(a) states: 'Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any *party and after such notice, if any, as* the court orders. * * *' Sparrow & Trench v. Strong, 2 Nev. 362, 366; Ex parte Breckenridge, 34 Nev. 275, 280, 118 P. 687, overruled on another point; Lindsay v. Lindsay, 52 Nev. 26, 33–34, 280 P. 95, 67 A.L.R. 824; Brockman v. Ullom, 52 Nev. 267, 268, 286 P. 417; Silva v. Second Judicial District Court, 57 Nev. 468, 474, 66 P.2d 422; Finley v. Finley, 65 Nev. 113, 119, 189 P.2d 334, 196 P.2d 766, overruled on another point; Iveson v. Second Judicial District Court, 66 Nev. 145, 152, 206 P.2d 755; Marble v. Wright, 77 Nev. 244, 248, 362 P.2d 265."

4. "§ *666. Suits for adjudication of water rights—Joinder of United States as defendant; costs*

"(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

"*Services of summons*

"(b) Summons or other process in any such suit shall be served upon the Attor-

of said motion, the United States appeared and raised the objection that the State Court was without jurisdiction on the grounds that the sovereign immunity of the United States had not been waived, that the proceeding to correct clerical error was not a suit for adjudication of rights to the use of water of the stream system or other source or for the administration of such rights under 43 U.S.C. § 666. The State Court found that it had jurisdiction over the United States, but denied the motion to correct the decree of 1929, holding that the omission of the two paragraphs was not clerical but judicial error.

The Supreme Court of Nevada, on July 15, 1965, 81 Nev. 390, 404 P.2d 5, found the omissions to be clerical errors. The State District Court was reversed with instructions to correct the decree so as to include paragraphs 6 and 7 of the Order of Determination and the said decree was corrected accordingly nunc pro tunc for October 14, 1929. Under mandate from the Nevada Supreme Court, the State District Court added paragraphs (f) and (g) to the decree. These paragraphs are identical in language with paragraphs 6 and 7 of the Order of Determination. The Government did not petition for certiorari to the United States Supreme Court from the decision of the Nevada Supreme Court.[5]

Thereafter, on March 2, 1966, the State Engineer issued an order implementing distribution of the waters of the stream system in accordance with paragraph (g) of the amended decree and gave due notice thereof to all claimants and water users on the stream system, including Plaintiff.[6] No appeal was taken from the

ney General or his designated representative.

*"Joinder in suits involving use of interstate streams by State*

"(c) Nothing in this section shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream. July 10, 1952, c. 651, Title II, § 208(a)-(c), 66 Stat. 560."

5. The Nevada Supreme Court brushed aside the Government's contention that sovereign immunity had not been waived in this case under § 666 on the narrow and technical ground that the United States had not cross appealed. This obviously was error. The Nevada Supreme Court should have decided whether or not the United States had waived sovereign immunity. Only the Congress can waive sovereign immunity. The dereliction of counsel for the Government does not constitute a waiver. United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). United States v. United States District Court, 9 Cir., 1953, 206 F.2d 303.

6.

"IN THE OFFICE OF THE STATE ENGINEER
OF THE STATE OF NEVADA

***************

"IN THE MATTER OF THE DETERMINATION OF THE RELATIVE RIGHTS IN AND TO THE WATERS OF PAHRANAGAT LAKE AND ITS TRIBUTARIES IN LINCOLN COUNTY, STATE OF NEVADA OF THE DECREE DATED OCTOBER 14, 1929 AS CORRECTED PURSUANT TO DECISION OF THE SUPREME COURT OF THE STATE OF NEVADA OF JULY 15, 1965. } ORDER

"Paragraph (g) of Article V of the Decree allows that in addition to the water allowed for irrigation, stock and domestic purposes, each user in his proper proportion and priority shall be entitled to an economical bi-monthly diversion of water for washing mineral salts from his lands. Such diversion will be permitted from October 1st to March 14th each year in accordance with custom long prevailing.

"For the purpose of administering Paragraph (g) of Article V the State Engineer will follow the priorities, acreages and duty of water as set out in the De-

order of the State Engineer as is provided by Nevada law.

On June 20, 1966, this action was initiated by the United States to have both paragraphs (f) and (g) of the decree and the order of the State Engineer of March 2, 1966, declared null and void, to enjoin the enforcement of the added paragraphs and the State Engineer's order, to enjoin all of the named defendant water users from diverting water to the extent that such diversions might diminish or extinguish the flow into Pahranagat Lake of the water needed to satisfy the Plaintiff's water rights, and to quiet the title of the United States to specific adjudicated, as well as certificated, water rights.

This Court must decide whether or not, by the provisions of 43 U.S.C. § 666, Congress has waived the sovereign immunity of the United States and subjected the Government to the jurisdiction of the courts of Nevada in the proceedings begun in March of 1964 in Case No. 3160.

There are really two questions:

1. Were the Nevada proceedings a suit for the adjudication of rights to the use of water of a river system or other source within the meaning of 43 U.S.C. § 666(a) (1)?

2. Were such proceedings a suit for the administration of such rights within the meaning of 43 U.S.C. § 666(a) (2)?

This Court believes that the first question must be answered in the negative and the second question, in the affirmative.

QUESTION I

Both the Plaintiff and the Defendants agree that the proceedings begun by the State Engineer in 1919 and concluded in 1929 by the entry of the formal decree was a suit for the adjudication of water rights of a river system within the meaning of § 666(a) (1). Defendants urged that the entire proceedings through 1965, when the 1929 decree was amended nunc pro tunc was such an adjudication. The Government argues that the adjudication proceedings terminated in 1929. The Government concedes that its water rights are no better or no worse than the rights of its predecessors in interest and that Nevada water law controls.

There is no body of Federal water law. United States v. Fallbrook Public Utility District, D.C., 165 F.Supp. 806, 831.

What rights the United States has and the extent thereof must be determined by the law of Nevada. California Oregon Power Co. v. Beaver Portland Cement Co., 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356 (1935). United States v. Humboldt Lovelock Irr. Light & Power Co., 9 Cir., 1938, 97 F.2d 38.

Acts of Congress waiving the sovereign immunity of the United States are strictly construed. The courts are confined to the letter of the statute waiving immunity. The liability and the rem-

cree. Claimants and their successors in interest will not be required to take or use the amount of water allotted to them on a continuous flow but may combine the same or any part thereof in rotation or periodic turn with the approval of the water commissioner and subject to the control of the State Engineer.

"Because of the limitation on the amount of water available for distribution, part of the priorities and lands that are listed in the Decree will receive their water during the months of October, December and February. The remainder of the priorities and lands not receiving their allotment during the above mentioned months will receive it during the months of November, January and March. The attached schedules are for the guidance of the water commissioner and can be altered with his consent.

"George W. Hennen
GEORGE W. HENNEN
State Engineer

"Dated at Carson City, Nevada
this 2nd of March 1966"

edy are created by statute, a limitation of the remedy is a limitation of the right. The terms of the consent of Congress to be sued in any court defines that court's jurisdiction to entertain the suit. The Harrisburg (Lewis v. Rickards), 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108 (1894). United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Uarte v. United States, D.C., 7 F.R.D. 705 (1948).

It is clear from the cases dealing with the language of § 666(a) (1) that a suit for adjudication of rights to use of water of a river system or other source means precisely that and no more. The adjudication, that is, the determination of the relative rights, must be general and encompass all water claimants. Although, as conceded, the proceedings begun in 1919 and concluded in 1929 were adjudication proceedings contemplated by § 666(a) (1), the proceedings commenced thirty-five years later, in 1964, are not embraced within the language waiving immunity as found in § 666(a) (1). People of State of California v. United States, 9 Cir., 1956, 235 F.2d 647; Miller v. Jennings, 5 Cir., 1957, 243 F.2d 157; State of Nevada ex rel. Shamberger v. United States, 9 Cir., 1960, 279 F.2d 699. Dugan v. Rank, 372 U.S. 609, at 617, 83 S.Ct. 999, 10 L.Ed. 2d 15 (1963); State of California v. Rank, 9 Cir., 1961, 293 F.2d 340; Green River Adjudication v. United States, 1965, 17 Utah 2d 50, 404 P.2d 251; Turner v. Kings River Conservation District, 9 Cir., 1966, 360 F.2d 184.

QUESTION II

However, it appears to this Court that the court proceedings begun in 1964, after the United States had acquired the Gardner Ranch and water rights, come within the purview of § 666(a) (2), that is, a suit for the administration of the water rights in a stream system previously adjudicated. It is believed that this is a case of first impression. This Court has examined all of the cases cited by counsel and all other cases found as a result of its own reading treating 43 U.S.C. § 666.

Let us examine the legislative history of § 666. See the report of Senator McCarran of Nevada, Senate Report No. 755, 82d Congress, 1st Session. Pages 2–6 read in pertinent part:

"The doctrine of prior appropriation had its inception in the Western States early in the settlement of the West, being brought about by the arid and semi-arid character of such States. The doctrine that 'first in time is first in right' to the beneficial use of the water in the streams of such States first became the law of appropriation by custom and was later sanctioned by constitutional and legislative enactment in 11 of the Western States. Under the law sanctioning the doctrine of 'first in time is first in right,' vast quantities of land in these States, beginning back in the territorial days, was brought under cultivation through the courage and hard work of those who homesteaded or otherwise secured farm and ranch lands and made appropriations of water with which to make such lands productive. Litigation with respect to the water rights developed early in the history of the right to the use of water by appropriation. Down through the years the courts of the respective States marked out the pathway whereby order was instituted in lieu of chaos. Rights were established and all of this at the expense, trial, and labor of the pioneers of the West, without material aid from our United States Government until a much later time when irrigation projects were initiated by Congress through the Department of the Interior and later the Bureau of Reclamation. Even then Congress was most careful not to upset, in any way, the irrigation and water laws of the Western States * * *

"It will be seen that in the Western States irrigation of the lands is essen-

tial to successful farming and ranching and failure by a landowner to receive the amount of water vested or adjudicated to him is likely to be fatal to his economic welfare.

"In the arid Western States, for more than 80 years, the law has been that the water above and beneath the surface of the ground belongs to the public, and the right to the use thereof is to be acquired from the State in which it is found, which State is vested with the primary control thereof.

"In 1877 the Congress, in the Desert Land Act of 1877 (19 Stat.L. 377, Ch. 107), severed the water from the land, and the effect of such statute was thereafter that the land should be patented by the United States separate and apart from the water and that all the nonnavigable water should be reserved for the use of the public under the laws of the States and Territories named in the act. This statute was construed by the Supreme Court of the United States in California-Oregon Power Co. v. Beaver Portland Cement Co. (295 U.S. 142 [55 S.Ct. 725, 79 L.Ed. 1356]), in which the Court, inter alia, held:

* * * * * *

"Nothing we have said is meant to suggest that the act, as we construe it, has the effect of curtailing the power of the States affected to legislate in respect of waters and water rights as they deem wise in the public interest. What we hold is that following the act of 1877, if not before, all non-navigable waters then a part of the public domain became publici juris, subject to the plenary control of the designated States, including those since created out of the Territories named, with the right in each to determine for itself to what extent the rule of appropriation or the common law rule in respect of riparian rights should obtain. For since Congress cannot enforce either rule upon any State, Kansas v. Colorado (206 U.S. 46, 94 [27 S.Ct. 655, 51 L.Ed. 956]), the full power of choice must remain with the State.

"It is interesting to note what the Court said in a marginal note on page 164 of the opinion [295 U.S., on page 731 of 55 S.Ct.]:

"In this connection it is not without significance that Congress, since the passage of the Desert Land Act, has repeatedly recognized the supremacy of State law in respect to the acquisition of water for the reclamation of public lands of the United States and lands of its Indian wards.

* * * * * *

"It is therefore settled that in the arid Western States the law of appropriation is the law governing the right to acquire, use, administer and protect the public waters as provided in each such State.

*"It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings.* [Emphasis added.] In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees

and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States. Congress has not removed the bar of immunity even in its own courts in suits wherein water rights acquired under State law are drawn in question. The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity.

"The committee believes that such a situation cannot help but result in a chaotic condition. Each water user under some State laws is required to pay a graduated fee or tax annually for the services of water commissioners. The commissioners must apportion the water to the decreed users thereof in accordance with their decreed rights, and are required to deny the use of water to any user who at a particular time is not in the priority for the available supply of water. Failure to comply with the lawful orders of the water commissioner subjects the offender to the administrative and penal orders of the court, usually issued in contempt proceedings. If a water user possessing a decreed water right is immune from suits and proceedings in the courts for the enforcement of valid decrees, then the years of building the water laws of the Western States in the earnest endeavor of their proponents to effect honest, fair and equitable division of the public waters will be seriously jeopardized.

"If such a condition is to continue in the future it will result in a throwback to the conditions that brought about the enactment of the statutory water laws, i. e., the necessity that the public waters so necessary to the economic welfare of the arid States be allotted in as equitable manner as possible to all users of the available supply thereof * * *

"The committee is aware of the fact, as shown by the hearings, that the United States Government has acquired many lands and water rights in States that have the doctrine of prior appropriation. When these lands and water rights were acquired from the individuals the Government obtained no better rights than had the persons from whom the rights were obtained.

"Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.

* * * * * *

"The committee is of the opinion that there is no valid reason why the United States should not be required to join in a proceeding when it is a necessary party and to be required to abide by the decisions of the Court in the same manner as if it were a private individual."

Once a legal proceeding within the purview of § 666(a) (1), determining relative rights of claimants to the waters of a stream system or other source, has been had and a decree adjudicating such rights entered, Congress has given its consent to any suit properly commenced for the administration of such rights under § 666(a) (2).

To administer a decree is to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of § 666(a) (2), commence among others such actions as described above, subjecting the United States, in a proper case, to the judgments, orders and decrees of the court having jurisdiction.

The statutory provisions of the Nevada water law empowering the State Engi-

neer to take certain administrative steps following the entry of the decree are not exclusive.

This Court holds that the application to the State Court in 1964 to correct the 1929 decree which culminated in the amended decree in 1965 and in the order of implementation of 1966 were proceedings within the meaning of § 666(a) (2). The sovereign immunity of the United States was waived and the Government is subject to the jurisdiction of the State Courts.

### CONCLUSION

The Government's claim to quiet title to certificated rights must fail. It is apparent from the decree, as entered in 1929 and as amended in 1965 (Para. I, p. 8, Exh. A, Stipulated Exhibits), that all prior existing water rights based upon certificates of appropriation issued by a State Engineer pursuant to State water law are protected by and exempted from the decree. Those certificated rights claimed by the Government, obtained after the 1929 decree, are admittedly junior rights.

The Government attacks the nunc pro tunc amendment and the State Engineer's order of March 2, 1966, implementing the same, urging that the amendment and order of implementation are invalid because of uncertainty. A short answer is that these are matters that the Government should have addressed to the State Court, because they have to do with the administration of the decree.

The Defendants are entitled to summary judgment. The Government's motion for summary judgment is denied. The complaint by the Government in this action constitutes a collateral attack on the State Court proceedings. The decision of the Supreme Court of Nevada in 1965, Alamo Irrigation Co. v. United States, supra, is res judicata.

This opinion constitutes this Court's Findings of Fact and Conclusions of Law. Summary Judgment will be entered accordingly.