MR. JUSTICE CARRIGAN
delivered the opinion of the Court.
This is an original proceeding brought pursuant to C.A.R. 21. The Federal Youth Center, an agency of the United States of America, has petitioned for a writ prohibiting the respondent district court from asserting jurisdiction over it in an action to quiet title to certain water rights. We issued a rule to show cause, and now discharge the rule.
I. HISTORY OF THE LITIGATION
Dudley Taylor, the plaintiff in the district court, filed an action seeking to quiet title to the first sixty statutory inches of water in the Warrior Ditch, which takes water from Bear Creek under an adjudicated priority. Taylor claims title to the water by virtue of conveyance as well as by adverse possession. He has named as parties-defendant those who might claim adversely to his title, including primarily the stockholders of the Warrior Ditch Company. The ditch company filed an answer alleging that water appropriated by the Warrior Ditch had been decreed to the company, and therefore belonged to its stockholders as co-owners.
On January 7, 1976, the Federal Youth Center, one of the named defendants and a stockholder in the Warrior Ditch Company, filed a petition for removal to the United States District Court on the ground that it is an agency of the United States. Upon removal, the Center asserted that the state court had no jurisdiction because the United States had not waived its sovereign immunity. The United States District Court ordered that the case be remanded to the state court, finding that even if removal may have been permissible, the case should be remanded for the reasons stated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[1] The sovereign immunity issue was not addressed in the remand order.
*58 The Federal Youth Center then entered a special appearance in the respondent Colorado district court, for the sole purpose of filing a motion to dismiss for lack of jurisdiction over the Center, as an agency of the United States. The respondent court denied the motion, finding that it had jurisdiction and that the Youth Center should not be dismissed on sovereign immunity grounds. It is from that order that the petitioner brings this original proceeding asking that we prohibit the district court from exercising jurisdiction. We have concluded that, under the special circumstances here presented, the district court has jurisdiction over the Youth Center as an instrumentality of the United States. Therefore, we hold that the motion to dismiss was properly denied.
II. QUESTIONS PRESENTED
The United States relies upon the premise, well-established by precedent, that it cannot be subjected to the jurisdiction of any court without the consent of Congress. E. g., Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); United States v. District Court in and for the County of Eagle, 169 Colo. 555, 458 P.2d 760 (1969), aff’d, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971). It is argued that the only possible sources of consent are 28 U.S.C. §2409a and 43 U.S.C. §666, but that neither section applies to this case. The respondent concedes that 28 U.S.C. §2409a by its terms is inapplicable;[2] therefore we need to discuss only the applicability of 43 U.S.C. §666, the “McCarran Amendment.”
III. APPLICABILITY OF THE McCARRAN AMENDMENT
A. General Scope.
The McCarran Amendment provides, in pertinent part, as follows:
“§666. Suits for adjudication of water rights — Joinder of United States as defendant; costs.
(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be *59 deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit.” 43 U.S.C. §666 (Emphasis added.)
The precise issue which we address is whether an action to quiet title to water rights in a Colorado district court falls within this statutory consent to jurisdiction. We hold that it does.
Numerous cases have construed the McCarran Amendment, and to some extent they have defined the limits of its operation. See, e.g., Colorado River Water Conservation District v. United States, supra; United States v. District Court in and for the County of Eagle, supra; United States v. District Court in and for Water Division No. 5, 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). However, the precise question here at issue has not previously been considered. Despite this lack of precedent, it is apparent from the statute’s broad language and underlying policy that the United States has consented to be made a party to actions of this type.
It is important to note at the outset that §666(a) consents to joinder of the United States in two types of suits: “(1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights.” (Emphasis added.) See United States v. District Court in and for the County of Eagle, supra, 401 U.S. at 524, 91 S.Ct. at 1002, 28 L.Ed.2d at 282. Nearly every case which has discussed this statute has concentrated on the meaning and scope of subsection (a)(1), and it is clear from reading those cases that the “adjudication” referred to was not intended to encompass the type of litigation presented in this case. An action to quiet title to water rights does not involve either a “general” or “supplemental” adjudication of rights to the use of water in a river system or other source, as those terms have been construed in earlier cases. United States v. District Court in and for the County of Eagle, supra; United States v. District Court in and for Water Division No. 5, supra; Dugan v. Rank, supra.
It is also apparent, however, that the statutory consent is not limited solely to general or supplemental adjudications. If that had been the intent, there would have been no reason to include subsection (a)(2), which deals with suits involving the “administration” of water rights which the United States owns or is in the process of acquiring. Rather, reading the entire section as an integrated whole leads us to conclude that once a legal proceeding within the scope of §666(a)(1) has determined the *60 relative rights of claimants to the waters of a river system or other source, and a decree adjudicating those rights has been entered, Congress has given its consent, under §666(a)(2), to any suit properly commenced for the administration of such rights. United States v. Hennen, 300 F. Supp. 256 (D. Nev. 1968).
The ultimate question, then, is whether an action to quiet title to previously adjudicated water rights is a proceeding “administering” those rights, within the purview of §666 (a) (2). We hold that it is.
B. Statutory Language.
In support of this conclusion, we first refer briefly to the language of the statute, supra. It would be difficult to draft a provision more all-inclusive than §666(a)(2). As the court noted in United States v. Hennen, supra: “To administer a decree is to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language.” 300 F. Supp. at 263. In short, a suit for the “administration” of water rights could be virtually any action concerning the status of those rights as they had been previously adjudicated. Clearly, a suit designed to determine the true ownership of a particular water right falls within this broad language since its determination affects any continued water use by each of the various claimants involved.
C. Policy and Legislative Intent.
Perhaps more importantly, the underlying policies which supported enactment of the McCarran Amendment also support the construction of the statute which we today adopt. The committee report reads in part as follows:
“It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other waters users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment *61 or decree of the State court is ineffective as to the water right held by the United States. Congress has not removed the bar of immunity even in its own courts in suits wherein water rights acquired under State law are drawn in question. The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity.” Senate Report No. 755, 82d Congress, 1st Session (1951), at pp. 4-5.
See also Colorado River Water Conservation District v. United States, supra. In other words, the intent of the McCarran Amendment was to ensure that the United States would be subject to suits seeking initial declaration or adjudication of water rights, as well as to subsequent proceedings further affecting or disposing of those rights. To provide only the former consent, without the latter, would be to allow the United States to take advantage of each state’s water law system and acquire adjudicated water rights, without being limited by subsequent state actions attempting to assure the orderly use of those rights.
In this case, if the United States were not susceptible to joinder, the McCarran Amendment’s objective would be thwarted. Even though the ownership of only one decreed water right — priority number four on Bear Creek — is at issue, failure to settle that question will affect the numerous stockholders of the Warrior Ditch Company as well as the claimants in this quiet title action. The fact that only one water right is at issue does not make this any less a situation where complete administration of the right is essential to the ability of its owners or claimants to put it to beneficial use or to buy, sell, or otherwise transfer all or part of the right.
In addition, the legislative history of 28 U.S.C. §2409a, supra, n. 2, indicates that the reason Congress excluded water rights actions from its provisions was not to prohibit actions to quiet title to water rights. Rather Congress recognized that water rights litigation was already covered by another statute and therefore there was no need to include such actions in §2409a. In an executive communication to the House of Representatives, which was embodied in the House Report, the Attorney General of the United States wrote:
“The remedy provided in the draft bill does not apply to civil actions . . . involving or relating to water rights. These actions are provided for in other provisions of the Code. See . . . sec. 666 of title 43.” House Report No. 92-1559, 1972 U.S. Code Cong. & Admin. News 4547, 4555 (Emphasis added.)
Therefore, there is at least some indication that those who drafted the quiet title provision excluded quiet title actions involving water rights only because such actions were already permitted by the McCarran Amendment.
D. Non-Exclusiveness of Statutory Procedures.
In support of the petitioner, however, the Warrior Ditch Company argues that the term “administration,” as it is used in §666(a)(2), must be *62 read to include only those statutory proceedings set forth in the Colorado Water Right Determination and Administration Act of 1969,[3] and that a quiet title action is not one of those proceedings. We cannot accept such a limited construction of the McCarran Amendment.
As we have previously noted, the stated purpose of §666 was to enable each state to administer its own water law system as efficiently and completely as possible.
“Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the state, if there is to be a proper administration of the water law as it has developed over the years.
* * * *
“The committee is of the opinion that there is no valid reason why the United States should not be required to join in a proceeding when it is a necessary party and to be required to abide by the decisions of the Court in the same manner as if it were a private individual.” Senate Report No. 755, 82d Congress, 1st Session (1951) at p. 6.
Thus, the intent of Congress was to defer to the respective water adjudication and administration systems of the states. In doing so, specific reference to particular laws of each state would have been a practical impossibility, and would have defeated the purpose of leaving water rights administration procedures to state development. Indeed, Congressional reference to the Water Right Determination and Administration Act of 1969, with the intent to limit the meaning of “administration” to the statutory procedures described therein, would have been impossible, since major portions of the 1969 Act were npn-existent when the McCarran Amendment was passed in 1952. /'
Accordingly, we construe the broad language of §666(a)(2) to refer to the entire body of water law administration procedures of each state, regardless of the forms in which they may exist. In Colorado, as in many states, those procedures derive from statutes, judicial decisions, and administrative regulations. Exclusion of any portion of those would result in only a partial fulfillment of the legislative intent of the McCarran Amendment. Although the administrative procedures established by the 1969 Act are a major part of Colorado water law, they are not exclusive. United States v. Hennen, supra, at 263-64.
E. Inapplicability of Dugan v. Rank.
/ Finally, the petitioner and the Warrior Ditch Company rely heavily on Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), for their position that this litigation is not within the purview of §666. We are not persuaded.
*63 First of all, as we have noted above, that case does not address the question of the scope of §666(a)(2). The Supreme Court’s entire holding on this subject is quite brief:
“It is sufficient to say that the provision of the McCarran Amendment . . . relied upon by respondents and providing that the United States may be joined in suits ‘for the adjudication of rights to the use of water of a river system or other source,’ is not applicable here. Rather than a case involving a general adjudication of ‘all the rights of various owners on a given stream,’ S. Rep. No. 755, 82d Cong., 1st Sess. 9 (1951), it is a private suit to determine water rights solely between the respondents and the United States and the local Reclamation Bureau officials. In addition to the fact that all of the claimants to water rights along the river are not made parties, no relief is either asked or granted as between claimants, nor are priorities sought to be established as to the appropriative and prescriptive rights asserted.” 372 U.S. at 618-619, 83 S.Ct. at 1005, 10 L.Ed.2d at 22. (Emphasis added.)
There is no indication whether construction of the broad “administration” language of §666(a)(2) was ever raised by the parties, but the court clearly did not speak to its applicability. Thus the decision cannot be considered controlling here.[4]
Second, the facts of this case are readily distinguishable from those in Dugan v. Rank, supra. The latter case was a suit seeking an injunction against the United States and Reclamation Bureau officials, to restrain them from impounding water of the San Joaquin River behind the Friant Dam and preventing the plaintiffs’ use of the river’s water. There, as the court notes, only the relative rights of the plaintiffs and the United States were at issue. The plaintiffs did not seek relief as between themselves and other claimants on the river, nor an adjudication of the relative priorities of rights among themselves.
In this case, on the other hand, the question presented is who is entitled to what portions of particular adjudicated water rights. Necessarily involved is the determination of the relative rights of all parties claiming water from the particular water source, in this case the Warrior Ditch.[5] Since the apportionment of water to users and co-owners of a ditch is on a pro rata basis in times of shortage,[6] the relative claims of all the claimants *64 to these particular water rights are at issue. If orderly beneficial use of these water rights is to continue, as intended by the McCarran Amendment, the court charged with the obligation for determining their ownership and relative priorities must have the capacity to settle disputes as to all the parties who claim rights in the water at issue. Thus the state court, when it quiets title, is “administering” the water rights involved in the sense in which the McCarran Amendment employed the word “administration.”
In this regard, it may be helpful to note the similarity between a water rights adjudication proceeding and a quiet title action. In either case, the end result is a decree which is necessarily incorporeal, being subject to abandonment or loss by adverse possession and thus having “no prospective efficacy upon the chain of title to the right.” King, Colorado Practice §174, at 186. The decree granted does not and cannot guarantee the owner that his title or priority will not be wholly or partially lost in the future by abandonment or adverse possession. In either case, if an abandonment should occur, a new adjudication or quiet title action may be necessary, to redetermine the relative rights and priorities of the remaining owners and claimants.
Here, the substance of the plaintiffs adverse possession claim is that one or more of the claimants to water in the Warrior Ditch have lost their respective rights by failure to exercise them. Such a claim is substantially identical to a claim that one has abandoned a water right; in fact, the essence of the plaintiffs assertion is that part of a particular water right has been abandoned. The remedy sought, then, is analogous to that provided in a water rights adjudication proceeding in which an abandonment is declared. If the remedy here sought is granted, the result will be similar. That was clearly not true in Dugan v. Rank, supra, which did not require, in order to reach the result sought, a redetermination of the relative rights of all the claimants on the particular water source.
In summary, we hold that the United States has consented to be made a party to this action to quiet title to water rights, by virtue of the language, policy, and legislative intent of 43 U.S.C. §666(a)(2).
Accordingly, the rule to show cause is discharged.

 That case held that even though the McCarran Amendment, 43 U.S.C. §666, gave consent to concurrent federal and state jurisdiction over controversies involving federal water rights, several factors supported the federal district court’s decision to defer to the proceedings commenced in the state court, which would resolve the dispute.

 2“§2409a. Real property quiet title actions.
(a) The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights . . . This section does not .. . apply to or affect actions which may be or could have been brought under . . . section 208 of the Act of July 10, 1952 (43 U.S.C. §666).” (Emphasis added.)

 Sections 37-92-101, et seq., C.R.S. 1973.

 In addition, we note that the "general adjudication” language of Dugan v. Rank has since been broadened. United States v. District Court in and for the County of Eagle, supra.

 The McCarran Amendment does not require that all claimants along an entire river or river system be joined — it refers to rights to use the water of a river system or “other source.” Nearly any proceeding to administer water rights will by necessity consider only a fragment of a particular river system. United States v. District Court in and for the County of Eagle, supra.

 Section 37-86-112, C.R.S. 1973. See also City and County of Denver v. Just, 175 Colo. 260, 487 P.2d 367 (1971). We note that the plaintiff below claims a right to the “first sixty inches” of water in the ditch, thus alleging a priority over other ditch users, contrary to the normal pro rata apportionment system. The basis for this claimed priority is not explained. We do not pass upon the issue, of course, since we do not reach the merits of the case.