**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Mary AKIN et al., Defendants-**
**Appellees.**

**No. 73–1807.**

United States Court of Appeals,
Tenth Circuit.

Submitted Aug. 19, 1974.

Decided Oct. 2, 1974.

Rehearing Denied Nov. 12, 1974.

Walter Kiechel, Jr., Deputy Asst. Atty. Gen. (Wallace H. Johnson, Asst. Atty. Gen., and Edmund B. Clark, Donald W. Redd, and Lawrence E. Shearer, Attys., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellant.

John E. Bush, Deputy Atty. Gen. (John P. Moore, Atty. Gen., Clyde O. Martz, Raphael J. Moses, and James D. Geissinger, Special Asst. Attys. Gen., on the brief), for defendants-appellees The State Board of Agriculture and The Colorado Game and Fish Commission (Colorado Wildlife Commission and Colorado Board of Parks and Outdoor Recreation).

L. W. McDaniel, Durango, Colo., on the brief for defendant-appellee Southwestern Water Conservancy District.

Fairfield & Woods and Ireland, Stapleton, Pryor & Holmes, P. C., Denver, Colo., on the brief, for defendant-appellee Mancos Water Conservancy District.

Fairfield & Woods, Denver, Colo., on the brief for defendant-appellee Southeastern Colorado Water Conservancy District.

Kenneth Balcomb, Glenwood Springs, Colo., for intervenor-appellee Colorado River Water Conservation District.

Thomas W. Fredericks, David H. Getches and Robert S. Pelcyger, Attys., Native American Rights Fund, Boulder, Colo., on the brief of amici curiae Southern Ute Indian Tribe, Ute Mountain Ute Indian Tribe and National Tribal Chairmen's Association.

George L. Zoellner, Kenneth L. Broadhurst, Glenn Saunders, Special Counsel and Jack Ross, Special Counsel, Denver, Colo., on the brief, for defendant-appellee City and County of Denver, acting by and through its Board of Water Commissioners.

Before HILL and DOYLE, Circuit Judges, and TALBOT SMITH *, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The questions presented in this appeal are, first, whether or not the District Court had jurisdiction to entertain this action which was instituted by the United States on its own behalf and on behalf of certain Indian tribes, or, secondly, assuming that the District Court had jurisdiction, whether the court should have abstained.

This is a water rights case which was instituted by the United States in the United States District Court for the District of Colorado. The action was brought on behalf of the United States and on behalf of the Ute Mountain and Southern Ute Indian Tribes on November 14, 1972. It sought the adjudication of all water rights held by the United States in its own right and as trustee for the Ute Mountain and Southern Ute Indian Tribes in the San Juan Basin but, particularly, adjudication of all of its reserved rights in the San Juan River of Colorado. There are approximately 1200 named defendants.

The reserved rights asserted by the United States consist of those used in connection with Mesa Verde National Park, the Yucca House National Monument, the Hovenweep National Monument, Bureau of Reclamation projects

* Honorable Talbot Smith, United States District Judge, Ann Arbor, Michigan, sitting by designation.

within the State of Colorado and lands reserved by the United States in Colorado. On behalf of the Indian tribes the United States claims further reserved rights for use of the Ute Mountain Ute Tribe and the Southern Utes on their reservations. The Colorado River Water Conservation District intervened as a defendant for the purpose of filing a motion to dismiss. Other intervenors followed including the Southeastern Colorado Water Conservancy District and the Board of Water Commissioners, City and County of Denver.

A subsequent suit was filed on January 3, 1973 in State Court by the Mancos Water Conservation District and the Southeastern Colorado Water Conservancy District embracing similar subject matter.** In this action the plaintiffs sought judicial determination of the identical water rights which the United States sought to have adjudicated. The United States was joined as a defendant in the state action pursuant to the so-called McCarran Amendment, 43 U.S.C. § 666, which allows a joinder of the United States in such a suit in state court.

The United States District Court's dismissal of the action was on the ground of the abstention doctrine and for reasons of "comity." In effect, therefore, the court's assumption was that it had jurisdiction.

Thus, the primary issue is whether the trial court erred in its decision to abstain. Inasmuch as the defendants-appellees also contend that the District Court lacked jurisdiction to hear the case, we shall take up that issue also.

## I.

### THE JURISDICTION QUESTION

The United States has alleged that jurisdiction in District Court was conferred by 28 U.S.C. § 1345 which gives to district courts original jurisdiction of all civil actions commenced by the United States except as otherwise provided.

The Colorado River Water Conservation District takes the position that 43 U.S.C. § 666, the McCarran Amendment, which gives consent to joinder of the United States "in any suit for the adjudication of rights to the use of water," etc.,[1] not only gives a state court jurisdiction over the United States, it also, according to their further argument, excludes federal courts from assuming jurisdiction. We disagree.

The starting point in this analysis is Article III of the United States Constitution which extends the judicial power to controversies to which the United States shall be a party. Although this provision is not self-implementing, it does evidence the intention of the Framers to allow the United States to sue in its own courts. The statute, § 1345, *su-*

** It has been called to our attention in an informal letter from one of the attorneys for defendants-appellees that this statement is incorrect. It is said that on that date Southwestern Colorado Water Conservation District filed a motion for the joinder of the United States under the McCarran Act. The record does not reveal the true fact. We note the suggested correction, even though it is not outcome determinative.

1. The full text of this section reads as follows:

Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United

States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

*pra,* confirms this right of the United States.[2]

The rationale for the right of the United States to sue in federal court is expressed by Mr. Justice Story in his work, Story, The Constitution § 1674:

It would be a perfect novelty in the history of national jurisprudence, as well as of public law, that a sovereign had no authority to sue in his own courts. Unless this power were given to the United States, the enforcement of all their rights, powers, contracts and privileges in their sovereign capacity would be at the mercy of the states.

The right was recognized from the earliest days in our history. The Judiciary Act of 1789 gave the district courts jurisdiction concurrent with that of the state courts "of all suits at common law where the United States shall sue." This Act also gave the circuit courts jurisdiction "of all suits of a civil nature at common law or in equity," subject to a jurisdictional amount. The clear right of the United States to maintain actions asserting proprietary rights is discussed in H. M. Hart & H. Wechsler, The Federal Courts and The Federal System (2d ed. 1973), at 1301–09. The authors cite Cotton v. United States, 11 How. 229, 13 L.Ed. 675 (1850) as an example of the right of the United States to bring an action even without an authorizing statute. That was a trespass case.

With respect to the cases in which the government asserts a proprietary right, the authors say:

The most striking recent examples of the assertion of proprietary rights of the United States, illustrating the magnitude of the interests that may be involved, were the much-disputed tidelands cases. Compare the motion of the United States for leave to intervene in Nebraska v. Wyoming, 304 U.S. 545 [58 S.Ct. 1035, 82 L.Ed. 1519] (1938). See Comment, Federal Ownership of Inland Waters: The Fallbrook Case, 31 Tex.L.Rev. 404 (1953). See also the cases growing out of the oil scandals of the Harding administration. Pan American Petroleum & Transport Co. v. United States, 273 U.S. 456 [47 S.Ct. 416, 71 L.Ed. 734] (1927); Mammoth Oil Co. v. United States, 275 U.S. 13 [48 S.Ct. 1, 72 L.Ed. 137] (1927).

Closely related to the proprietary cases are those in which the United States has established its status as guardian of the Indian tribes and its standing in litigation to vindicate Indian rights. See, *e. g.,* Heckman v. United States, 224 U.S. 413 [32 S.Ct. 424, 56 L.Ed. 820] (1912); United States v. Board of Comm'rs of Osage County, 251 U.S. 128 [40 S.Ct. 100, 64 L.Ed. 184] (1919); Cummings & McFarland, Federal Justice 250–317, 384–413 (1937).

H. M. Hart & H. Wechsler, The Federal Courts and The Federal System (2d ed. 1973), at 1302.

▉ The McCarran Amendment does not express an intention that the United States shall utilize state courts for the purpose of litigating its claims to water. It is said by appellees that the original language of the Amendment contained a proviso which allowed the United States to remove to federal court any action in which it was a defendant within the scope of the waiver of sovereign immunity contained in the Amendment. The argument continues that since Congress dropped this proviso it follows that Congress intended to deprive the United States of its right to sue under § 1345. We disagree with the conclusion drawn. The McCarran Amendment merely allowed the United States to be *joined* in a state action in a case in which the United States owns water rights and is a

---

2. Section 1345, *supra*, provides:
   § 1345. United States as plaintiff
      Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

necessary party to the suit. However, this falls short of furnishing by implication a repeal of § 1345 applicable to water cases. The Amendment's purpose was to permit complete adjudication in a state court action and to prevent frustration of the parties because of inability to obtain jurisdiction over the United States. So, elimination of the removal proviso originally in the Amendment at most expressed congressional intent that where the United States is joined under the circumstances set forth in the Amendment it will not be allowed to frustrate the procedures in the state court. But the statute did not prohibit the United States from ever removing a water rights case to the federal court. If Congress had intended to force the United States to litigate its water cases in state courts, it could have done so by creating a water rights exception to § 1345. This it did not do either expressly or impliedly.[3]

The decisions in United States v. District Court, County of Eagle, Colorado, 401 U.S. 520, 525, 91 S.Ct. 998, 28 L.Ed. 2d 278 (1971) and United States v. District Court, Water Division No. 5, Colo., 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed. 2d 284 (1971) do not support the appellees in their present contentions. The issue in both of these was whether the consent to suit of the United States by provision of the McCarran Amendment extended to reserved rights. The Supreme Court held that the Amendment did include this type of right and it followed that the United States could be joined as a *defendant* in a state water rights proceeding. But by so holding the Court did not impliedly say that the United States was prohibited from litigating its reserved water rights as a plaintiff in federal court. At most, it held that the McCarran Amendment authorized a concurrent jurisdiction with state courts to try federal water rights cases—concurrent with the jurisdiction of the federal courts under § 1345, *supra*. This is far different from appellees' position that the Amendment prohibits the United States' litigation of these rights in federal court.

Nor does the decision of the United States District Court for the District of Utah in In re Green River Drainage Area, 147 F.Supp. 127 (D.Utah 1956) support appellees. This was a removal problem wherein the court held that the United States cannot automatically remove its water rights cases to federal court. The court conceded that the McCarran Amendment does not preclude such removal if it would otherwise be removable.

The Supreme Court in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) considered a situation in which the United States was joined as a defendant in a private suit to determine water rights solely between certain private claimants and the United States. The Court held that the McCarran Amendment was not intended to apply to a private suit between the United States and a private party to determine conflicting water rights contentions.

We must then reject the notion that the McCarran Amendment partially repealed or modified § 1345, *supra*. This conclusion suggests that § 666 has a very limited coverage and is perhaps only procedural. It permits, but does not necessarily require, the United States being subjected to state jurisdiction.

3. Senator McCarran himself stated that:
   S. 18 is not intended . . . to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value.
   S.Rep.No. 755, 82d Cong., 1st Sess., at 9. *See also* United States v. District Court, County of Eagle, Colorado, 401 U.S. 520, 525, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Nevada ex rel. Shamberger v. United States, 279 F.2d 699 (9th Cir. 1960).

## II.

### THE ABSTENTION QUESTION

Having concluded that the United States District Court's jurisdiction was unimpaired, the issue remains whether, considering the character of the case, the District Court was correct in its abstention stance. The Conservation Districts together with the Board of Water Commissioners, State Board of Agriculture and the Colorado Game and Fish Commission assert, of course, that abstention was proper. The United States complains that the court's action was erroneous.

It has been recognized from very early times that federal courts are not to decline the exercise of expressly granted jurisdiction. This principle was first expressed by Mr. Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821). This oft-repeated statement was that "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." On its face this concept conflicts with the abstention principle which is that federal courts in the exercise of a wise discretion are to restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the Federal Judiciary. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

### A. *Guidelines*

It is, of course, fundamental that the doctrine of abstention is to be applied in narrowly limited special circumstances. *See* Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (citing Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949)). *See also* Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed. 2d 36 (1972); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163 (1959); Meredith v. City of Winter Haven, 320 U. S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

### B. *Applicable Areas*

1. The Supreme Court placed it in perspective when it said that it is an extraordinarily narrow exception to the rule that a federal court has a duty to adjudicate a controversy presented to it over which it has jurisdiction. *See* County of Allegheny v. Frank Mashuda Co., *supra*, and *see* Meredith v. City of Winter Haven, *supra*. It is within this narrow scope that we examine the various cases which have applied the abstention principle.

One facet of the abstention doctrine is that which seeks to give a state court full opportunity to dispose of a case which is potentially governed by state law before entertaining it and deciding it as a constitutional law question. *See* Railroad Commission of Texas v. Pullman Company, *supra*, a case in which the parties being regulated sought an injunction against enforcement of an order of the state regulatory agency.

Ours is not a case which presents constitutional questions and state questions, both of which show capability for disposing of the case whereby the state decision could obviate the necessity for a constitutional law decision.

2. A second abstention category is exemplified in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which holds that federal courts are not to interfere with state regulatory schemes; that they are to refrain from anticipating a constitutional question and interfering with the state regulatory agency when it is engaged in administering state law. *See* Alabama Public Service Comm. v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933); 1A J. Moore, Moore's Federal Practice § 0.203 [1]; C. Wright, Law of Federal Courts 200 (2d ed. 1970).

Here the federal court is not short-circuiting or interfering with efforts of a state administrative regulatory system, whereby the *Burford* rule could operate.

3. A further recent application of abstention is in cases in which a novel and important issue of state law is presented. *See* Kaiser Steel Corp. v. W. S. Ranch Co., 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968). *Kaiser* was a New Mexico eminent domain and water case. It concerned alleged inconsistency between a New Mexico statute and the New Mexico Constitution. Based on the fact that this was a novel and highly important question for the State of New Mexico, it was ruled that abstention was there appropriate. This holding was not dissimilar from Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). *Compare* County of Allegheny v. Frank Mashuda Co., *supra*. The fact, however, that both *Kaiser* and our case involve water rights does not render *Kaiser* determinative.

### C. *The Race to the Courthouse*

■ The Colorado litigants also argue strenuously that this cause must not be determined by who wins the race to the courthouse. This is a recurring contention in cases in which state and federal courts have concurrent jurisdiction over a property case. True, the race idea has no intrinsic attractiveness. At the same time, it must be recognized that priority of filing has validity in the situation in which concurrent jurisdiction exists. The priority of the court which first acquires jurisdiction over the subject matter is entitled to recognition, and where the plaintiff has selected the forum and has filed first, his right to try his case in that court is not to be lightly dismissed.

The priority principle is held to apply where a federal and state court have concurrent jurisdiction and the action is *in rem*. *See* Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.

Ct. 386, 79 L.Ed. 850 (1935); Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909); Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867 (1893); Gay v. Brierfield Coal & I. Co., 94 Ala. 303, 11 So. 353 (1891); Crosby v. Spear, 98 Me. 542, 57 A. 881 (1904); Rogers & B. Hardware Co. v. Cleveland Bldg. Co., 132 Mo. 442, 34 S.W. 57 (1896); 20 Am.Jur.2d, Vol. 20 § 135, p. 485. And so the priority factor is entitled to be weighed in the abstention scale.

### D. *Effect on Abstention of United States as Plaintiff*

We next consider (on the decision to abstain) the effect of the presence of the United States as a party plaintiff in the action. There is a dearth of authoritative case law bearing directly on the point. The most helpful decision is that of the Supreme Court in Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). The essential issue in that case was whether the United States owned minerals on lands, the surface of which it owned. A private party had claimed the minerals in a state court action against the lessee of the United States. Thereupon, the United States filed an action in the United States District Court for the Eastern District of Louisiana. It sought to quiet title and to enjoin the adverse claimant in state court from prosecuting its action. The section of the Judicial Code which prohibits injunctions against State Court actions, 22 U.S.C. § 2283, was interposed. But the Supreme Court held that it was inapplicable to the United States when it was the suitor. In reaching this result the statute was ruled to be ambiguous and not susceptible to imputing congressional intent to make it applicable to the United States.[4]

4. The reasoning of the Court was:
There is, however, a persuasive reason why the federal court's power to stay state court proceedings might have been restricted when a private party was seeking the stay but not when the United States was seeking similar relief. The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than

The Court went on to hold that it was proper for the District Court to entertain the suit in the federal court ". . . and to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment." The Court's prior decision in United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936) in which an injunction had been denied, notwithstanding the presence of the United States as a party, was distinguished on its facts. There, it was pointed out, the United States was one of many claimants to a fund and was not different from any other litigant. However, in treating the United States differently in *Leiter* it was emphasized that the policy (of exempting the United States from the anti-injunction statute) is more compelling where the United States seeks to advance a national interest.[5]

■ The presence of the United States as a plaintiff seeking to establish rights which have a national and sovereign character is then a factor which militates strongly against the applicability of abstention.

> when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283, 28 U.S. C.A. § 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, 28 U.S.C.A. § 2283, alone.
>
> 352 U.S. at 225–226, 77 S.Ct. at 290–291.

5. The opinion distinguishes the situation where the United States is "like any private claimant":

> Moreover, the Bank of New York case presented the more unusual situation where the United States, like any private claimant, made a claim against funds that it never possessed and that were in the hands of depositaries appointed by the state court. In this case, a private party

■ Finally, counsel for the appellees urge that the Supreme Court's decision in United States v. District Ct., County of Eagle, Colo., 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) justifies the trial court's decision to abstain. We have carefully considered this case and we are of the view that it does not consider the problem which is presented in the case at bar. The United States there sought through writ of prohibition in the Colorado Supreme Court to prevent the District Court for Eagle County, Colorado from asserting jurisdiction over it. This effort failed, but this case did not suggest a lack of jurisdiction of the federal district court in a suit instituted by the United States. Nor did it hold that the state court by virtue of § 666 had exclusive jurisdiction. Further, it did not hold nor even suggest that abstention by a federal court, the jurisdiction of which had been invoked, should be ordered.[6]

The judgment of the District Court is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

> is seeking by a state proceeding to obtain property currently in the hands of persons holding under the United States; the United States is seeking to protect that possession and quiet title by a federal court proceeding. Therefore, since the position of the United States is essentially a defensive one, we think that it should be permitted to choose the forum in this case, even though the state litigation has the elements of an action characterized as *quasi in rem*. We therefore hold that the District Court properly exercised its jurisdiction to entertain the suit in the federal court and to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment.
>
> 352 U.S. at 227–228, 77 S.Ct. at 292.

6. The Court was careful to note that reserved water rights of the United States "are federal questions which, if preserved, can be reviewed here after final judgment by the Colorado court." 401 U.S. at 526, 91 S.Ct. at 1003.