**STATE OF WYOMING; Goshen Irrigation District, a Wyoming Irrigation District, Plaintiffs,**

v.

**UNITED STATES of America; U.S. Department of Interior; U.S. Bureau of Reclamation; Manual Lujan, Secretary of Interior; Dennis Underwood, Commissioner, U.S. Bureau of Reclamation; and John Lawson, Manager, North Platte River Projects Office, Defendants.**

No. 89–CV–0286–J.

United States District Court,
D. Wyoming.

July 22, 1996.

Dennis C. Cook, Senior Assistant Attorney General, for Plaintiff State of Wyoming.

William L. Weaver, Jones, Eddington & Weaver, Torrington, Wyoming, for Plaintiff Goshen Irrigation District.

David D. Freudenthal, United States Attorney, Cheyenne, Wyoming, and Stuart B. Schoenburg, Land and Natural Resources Division, United States Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, DENYING ALL OTHER PENDING MOTIONS AS MOOT

ALAN B. JOHNSON, Chief Judge.

Before the court is the defendants' motion to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). The defendants contend this court lacks subject matter jurisdiction to reach the merits of the State of Wyoming's and the Goshen Irrigation District's (hereaf-

ter "Goshen") claims in the amended complaint because the defendants have not waived sovereign immunity or, in the alternative, because the claims asserted in the amended complaint do not give rise to a case or controversy within the meaning of Article III of the Constitution, in that plaintiffs lack standing and their claims are moot. Having considered all of the relevant facts and law, the materials submitted by the parties, and the arguments of counsel, the court concludes it lacks subject matter jurisdiction because the defendants have not waived sovereign immunity. The defendants' motion to dismiss the amended complaint is therefore **GRANTED.** In light of the court's conclusion, all other pending motions in this case have been rendered moot, and they are therefore **DENIED.**

**I**

The Casper–Alcova Irrigation District (hereafter "Casper–Alcova"), based in Mills, and plaintiff Goshen, based in Torrington, are irrigation districts organized under the laws of the State of Wyoming. Plaintiff Goshen operates and maintains a diversion dam, canal, and laterals for delivery of irrigation water to its landowners. The Bureau of Reclamation has contracted with Casper–Alcova to maintain and control water distribution to land in the Kendrick Project, a federal reclamation project planned, constructed, and operated in accordance with Wyoming law and the Reclamation Act of 1902, 43 U.S.C. § 371 *et seq.,* consisting of the Seminoe and Alcova Reservoirs and a system of canals and ditches that convey and distribute water from the North Platte River to the area north of Casper.

On May 5, 1989, Goshen and Casper–Alcova executed a written agreement (hereafter "the 1989 agreement"), under which Casper–Alcova agreed to lend Goshen 25,000 acre-feet of water from the Kendrick Project. The 1989 agreement provides as follows:

MEMORANDUM OF UNDERSTANDING OR AGREEMENT BETWEEN CASPER–ALCOVA IRRIGATION DISTRICT AND GOSHEN IRRIGATION DISTRICT

WHEREAS, the water supply forecast for the 1989 irrigation season for the North Platte Project is less than the amount normally required for irrigation of crops, and

WHEREAS, it appears that such a short supply of water will create serious hardships amoung [sic] the people of the North Platte Valley, through loss of crops and, as a result, other related business, and

WHEREAS, a loan of water, in an amount of approximately 25,000 acre feet, while not enough to provide normal supply, would greatly alleviate this critical situation for the Goshen Irrigation District of the North Platte Project, and

WHEREAS, the Casper–Alcova Irrigation District, without recognizing any right to the use of Kendrick Project Storage Water elsewhere than on the Kendrick Project, nevertheless, desiring to aid in the relief of the possible drouth [sic] situation, will agree to the loan of water under the terms and conditions hereinafter provided:

NOW THEREFORE, BE IT RESOLVED by the governing boards of the undersigned Irrigation Districts, that the following mutual agreement is hereby ratified and confirmed:

1. That the Casper–Alcova Irrigation District, with the approval of the Wyoming State Engineer, grant its consent to release from the Kendrick Project Storage Water Supply in an amount not to exceed 25,000 acre feet of water for diversion and use on the Goshen Irrigation Districts [sic] lands on the North Platte Project during the 1989 irrigation season.

2. That the total amount of Kendrick Project Water which is actually loaned to the Goshen Irrigation District shall be returned from the first of Goshen Irrigation District's share of the North Platte Project accrual in Pathfinder Reservoir for water year 1990.

3. In consideration of the loan of water to be made by the Casper–Alcova Irrigation District from Kendrick Project Storage as herein provided, and in addition to the return thereof as provided herein, the Goshen Irrigation District does hereby

agree that in the event the Kendrick Project Water Supply is insufficient in a year in the future when there is a supply available for the North Platte Project, said Goshen Irrigation District will loan, limited in amount to the total quantity of water, by accumulative totals, borrowed by the Goshen Irrigation District under this agreement, to the Kendrick Project from their equity in the North Platte Project Storage an amount of water sufficient to make the same delivery to the lands in the Kendrick Project as is made in any such year to the lands of the North Platte Project. Any loans so made by the Goshen Irrigation District shall be returned the first succeeding year that the Kendrick Project has sufficient useable [sic] storage water available to rturn [sic] the loan in its entirety.

4. That on furnishing to the District Office of the United State [sic] Bureau of Reclamation at Mills, Wyoming, an executed copy of this agreement, accompanied by an appropriate schedule for storage water release to the Goshen Irrigation District, the Bureau of Reclamation and within its operations of federal storage works, will make the storage water releases covered by or under this agreement and it shall not make the United States a party to this agreement.

On July 28, 1989, the Wyoming State Engineer issued Temporary Water Order No. 89–46, authorizing the transfer of water from Casper–Alcova to Goshen for use in accordance with state law. On August 15 and 16, 1989, Goshen and Casper–Alcova wrote letters to the Bureau of Reclamation requesting that the Bureau of Reclamation release the water Casper–Alcova had agreed to lend Goshen. On August 23, 1989, the Bureau of Reclamation responded that it would not release the water in the absence of a contract between the Bureau of Reclamation and Goshen. Two days later, on August 25, 1989, the Wyoming State Engineer ordered the Bureau of Reclamation to release the Casper–Alcova water, on the ground Casper–Alcova and Goshen had fully complied with Wyoming law. The Bureau of Reclamation refused to comply with the Wyoming State Engineer's order, and stated that, under federal law, it could not release the water in the absence of a contract between the Bureau of Reclamation and Goshen.

Goshen, Casper–Alcova, and the State of Wyoming then brought this action for declaratory relief under 28 U.S.C. § 2201. The court subsequently dismissed Casper–Alcova's claims with prejudice pursuant to a stipulation between Casper–Alcova and the defendants. After the court dismissed Casper–Alcova from the action, Goshen and the State of Wyoming filed an amended complaint for declaratory relief, which was for the most part identical to the original complaint. In their amended complaint, Goshen and the State of Wyoming request that this court "[d]eclare that a contract between the Bureau [of Reclamation] and [Goshen] is not required to release [Casper–Alcova's] water on loan so long as there is compliance [with] Wyoming law and approval by the State Engineer" and "[g]rant such other relief as may be proper."

Immediately after Goshen and the State of Wyoming filed their amended complaint, the defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), contending this court lacks subject matter jurisdiction to reach the merits of Goshen's and the State of Wyoming's claims because the defendants had not waived sovereign immunity and because the amended complaint did not present a case or controversy within the meaning of Article III of the Constitution, on the ground Goshen and the State of Wyoming lack standing and their claims are moot. At the close of the hearing on the motion to dismiss, the court took the matter under advisement, but stated:

> I don't perceive much to be gained by keeping everyone in a great deal of suspense about how I see the case going in terms of a ruling on the motion to dismiss that has been filed by the government. Certainly at this point it is my view that the government has the better part of that argument, and I see the motion to dismiss being granted in this case.

Shortly after the hearing, Goshen and the State of Wyoming filed a notice of voluntary dismissal without prejudice pursuant to Fed. R.Civ.P. 41(a)(1). The defendants later

moved to quash the notice of voluntary dismissal, and the court granted their motion. The court will now consider the defendants' motion to dismiss for lack of subject matter jurisdiction.

## II

■ Defendants contend this court lacks subject matter jurisdiction to reach the merits of Goshen's and the State of Wyoming's claims because they are entitled to sovereign immunity. As a threshold issue, the court must determine whether Goshen's and the State of Wyoming's claims against each of the defendants are properly considered to be claims against the sovereign. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration ... or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations and internal quotation marks omitted). The court has no difficulty concluding Goshen's and the State of Wyoming's claims, as they relate to each of the defendants, amount to claims against the sovereign. Indeed, neither Goshen nor the State of Wyoming argue to the contrary.

■ The doctrine of sovereign immunity bars suits by states and state agencies against the federal government, unless it has consented to be sued. *Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983) ("The States of the Union, like all other entities, are barred by federal sovereign immunity from suing the United States in the absence of an express waiver of this immunity by Congress."); *United States v. Murdock Mach. & Eng'g Co. of Utah,* 81 F.3d 922, 929 (10th Cir.1996) ("It has long been established ... that the United States, as sovereign, is immune from suit save as it consents to be sued.") (citations and internal quotation marks omitted). Unless the United States has waived its sovereign immunity from the type of claim raised in a given suit, the federal courts lack subject matter jurisdiction over that suit, and the suit must be dismissed. *United States v.*

*Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain that suit") (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)); *Murdock Machine,* 81 F.3d at 930 ("[T]he existence of consent is a prerequisite for jurisdiction.") (citations and internal quotation marks omitted). The question whether this court has jurisdiction to reach the merits of the claims asserted in the amended complaint therefore hinges upon whether the United States has waived its sovereign immunity from the type of claims raised therein. In considering whether the federal government has waived sovereign immunity, the court must keep three key principles in mind: First, "[w]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Village,* 503 U.S. 30, 33, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992) (citations and internal quotation marks omitted). Second, "waiver must be unequivocally expressed by Congress," and therefore "[o]fficers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court." *Murdock Machine,* 81 F.3d at 931 (citations and internal quotation marks omitted). Third, "the Government's consent to be sued must be construed strictly in favor of the sovereign." *Nordic Village,* 503 U.S. at 33, 112 S.Ct. at 1014 (citations and internal quotation marks omitted). Applying these principles to this case, the court concludes that neither of the two statutes cited by Goshen and the State of Wyoming in the amended complaint and in the opposition to the motion to dismiss, the McCarran Amendment, 43 U.S.C. § 666, and the Reclamation Reform Act, 43 U.S.C. § 390uu, amount to an unequivocal waiver of sovereign immunity.

### A. *The McCarran Amendment*

■ As with any other problem of statutory interpretation, the court begins with the statutory language. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) ("In determining the scope of a statute, we look first to its lan-

guage."). The relevant portion of the McCarran Amendment provides as follows:

Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

43 U.S.C. § 666(a). By its plain language, 43 U.S.C. § 666(a)(1) waives sovereign immunity only in cases seeking an "adjudication of rights to the use of water of a river system or other source." In *Dugan*, 372 U.S. 609, 83 S.Ct. 999, the United States Supreme Court held the only actions that can be considered to be actions seeking an "adjudication of rights to the use of water of a river system or other source" are those in those "involving a *general* adjudication of 'all of the rights of various owners on a given stream.'" *Id.* at 618, 83 S.Ct. at 1005 (emphasis in original) (quoting S.Rep. No. 755, 82d Cong., 1st Sess. 9 (1951)); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976) ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system."); *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, 1130 (10th Cir.) ("The legislative history of the McCarran Amendment giving consent to join the United States manifests the Congressional intent to accomplish in one forum the general settlement of water rights of many users of a river system or other source."), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979); *United States v. Akin*, 504 F.2d 115, 119 (10th Cir.1974) ("The [McCarran] Amendment's purpose was to permit complete adjudication in a [single] action and to prevent frustration of the parties because of inability to obtain jurisdiction over the United States."), *rev'd on other grounds sub nom. Colorado River Water Conservation Dist.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1979). However, unless "all of the claimants to water rights" are made parties, the waiver

of sovereign immunity in 43 U.S.C. § 666(a)(1) does not apply. *Id.; see, also United States v. District Court for Eagle County*, 401 U.S. 520, 525, 91 S.Ct. 998, 1002, 28 L.Ed.2d 278 (1971) (case involved "general adjudication" as required under *Dugan* because "[t]his proceeding, unlike the one in *Dugan*, is not a private one to determine whether named claimants have priority over the United States. The whole community of claims is involved and as Senator McCarran, Chairman of the Committee reporting on the bill, said in reply to Senator Magnuson: 'S. 18 is not intended ... to be used for any other purpose than to allow the United states to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value.'") (footnote omitted) (quoting S.Rep. No. 755, 82d Cong., 1st Sess., 9); *United States v. District Court for Water Div. No. 5*, 401 U.S. 527, 529, 91 S.Ct. 1003, 1004, 28 L.Ed.2d 284 (1971) (case involved general adjudication because it "reaches all claims").

 In their response to the motion to dismiss, Goshen and the State of Wyoming do not contend the defendants have waived sovereign immunity under 43 U.S.C. § 666(a)(1), and the court sees no basis for such a contention. Even if Goshen and the State of Wyoming were to prevail in their action, the declaratory relief sought would not amount to a general adjudication of water rights, but, at most, simply an adjudication of Goshen's, the State of Wyoming's, and the United States' respective authority to prevent or allow releases of Casper–Alcova water. Instead Goshen and the State of Wyoming focus on 43 U.S.C. § 666(a)(2), which they refer to as the "administration clause." Under 43 U.S.C. § 666(a)(2), Congress has waived sovereign immunity "for the administration of such rights." In *Eagle County*, the Supreme Court held, in light of Congress' decision to use the disjunctive "or" between section (a)(1) and (2), that section (a)(2) does not "qualify" section (a)(1). *Eagle*

*County,* 401 U.S. at 524, 91 S.Ct. at 1002. It held, however, that the phrase " 'the administration of such rights' in § 666(a)(2) must refer to the rights described in (1) for they are the only ones which in this context 'such' could mean." *Id.* The Ninth Circuit elaborated on the link between § 666(a)(1) and § 666(a)(2) in *South Delta Water Agency v. United States,* 767 F.2d 531 (9th Cir.1985). In *South Delta,* the court embraced the district court's analysis in *United States v. Hennen,* 300 F.Supp. 256 (D.Nev.1968), and held "Congress intended a waiver of immunity under subsection (2) only after a general stream determination under subsection (1) has been made." *South Delta,* 767 F.2d at 541. The court cited the following passage from *Hennen* with approval:

> To administer a decree is to execute it, to enforce its provision, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of § 666(a)(2), commence among others such actions as described above, subjecting the United States, in a proper case, to the judgments, orders and decrees of the court having jurisdiction.

*Id.* (citing *Hennen,* 300 F.Supp. at 263). Quite simply, if "there has been no prior adjudication of relative general stream water rights ... there can be no suit 'for administration of such rights' within the meaning of the McCarran Amendment." *Id.* The court agrees with the Ninth Circuit on this point and, in addition to the reasons cited in *South Delta,* the court would emphasize two other grounds it believes support the Ninth Circuit's conclusion. First, the reading of § 666(a)(2) in *South Delta* and *Hennen* is consistent with the Supreme Court's mandate that "[w]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed" and "the Government's consent to be sued must be construed strictly in favor of the sovereign." *Nordic Village,* 503 U.S. at 33, 112 S.Ct. at 1014 (citations and internal quotation marks omitted). Second, the court finds support for the *South Delta* and *Hennen* courts' reading in the Senate Report on the McCarran Amendment:

> It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings.

S.Rep. No. 755, 82d Cong., 1st Sess. 4 (1951).

In light of the above, Goshen and the State of Wyoming's argument stands or falls on whether there has been a general adjudication of the water rights at issue and whether Goshen and the State of Wyoming's claims in the amended complaint amount to an action to administer rights acquired pursuant to such a general adjudication. Goshen and the State of Wyoming make much of the Supreme Court's holding in *Water Division No. 5,* 401 U.S. 527, 91 S.Ct. 1003. In that case, notice was served on the United States directing it, *inter alia,* to appear before the District Court of Colorado for Water Division No. 5 and file a statement indicating all water rights owned or claimed by the United States. *Id.* at 528, 91 S.Ct. at 1004. The United States contended it was immune under 43 U.S.C. § 666(a) because, among other thing, the proceedings before the District Court of Colorado for Water Division No. 5 did not amount to a general adjudication of water rights. *Id.* The Colorado Supreme Court rejected the United States' position and the United States Supreme Court granted certiorari. *Id.* The Supreme Court noted that under the Colorado Water Rights Determination and Administration Act of 1969, Colo.Rev.Stat. §§ 148–21–1 *et seq.* and § 148–21–18(3), the District Court of Colorado for Water Division No. 5 was given responsibility for water rights determinations affecting "all lands in the state of Colorado in the drainage basins of the Colorado river and all of its tributaries arising within Colorado, with the exception of the Gunnison river." *Id.* (quoting Colo.Rev.Stat. § 148–21–8(6)). The government noted, however, that the state statute contemplated monthly proceed-

ings before a water referee on water rights applications and contended those proceedings did not constitute general adjudications of water rights, because all water users and all water rights on a stream system are not involved in the referee's determinations. *Id.* at 529, 91 S.Ct. at 1004. Instead, the only water rights considered in the proceedings are those for which the application has been filed within a particular month. *Id.* The Court held the suit involved a general adjudication because the proceedings before the District Court of Colorado for Water Division No. 5 "reach[ ] all claims, perhaps month by month but inclusively in the totality." *Id.*

Goshen and the State of Wyoming attempt to analogize the jurisdiction and regulatory role of the District Court of Colorado for Water Division No. 5 and the State of Wyoming's regulatory scheme. According to Goshen and the State of Wyoming, the procedure works as follows:

A person wishing to appropriate water first files with the State Engineer an application for a permit to appropriate water. Wyo.Stat. Section 41–4–501 (1977). In the case of a reservoir, the appropriate person or entity files an application for a permit to construct. Wyo.Stat. Section 41–4–301 (Cum.Supp.1989). The State Engineer then either approves or rejects the permit after consideration of several factors including water availability, injury to other appropriators and public welfare. Wyo. Stat. Section 41–4–503 (1977). If the permit is granted, construction of the necessary facilities and diversion structures may begin. In the case of a reservoir, after construction and storage of water, the Wyoming State Board of Control can begin the adjudication process to perfect the water right. Wyo.Stat. Section 41–4–511 (Cum.Supp.1989). After proof of appropriation and advertisement of the adjudication, a certificate of appropriation is issued by the Board of Control as evidence of an adjudicated water right.

To prevail on this theory, Goshen and the State of Wyoming must persuade the court that the procedure described above amounts to a general adjudication of water rights and that Goshen's and the State of Wyoming's action can be construed as a suit to administer the rights acquired pursuant to such a general adjudication. Goshen and the State of Wyoming have not done so. After examining the procedure described above, the court concludes it, unlike the Colorado procedure discussed in *Water Division No. 5,* 401 U.S. 527, 91 S.Ct. 1003, does not purport to determine "all of the rights of various owners on a given stream" either in a single, global proceeding or over a period of time, but instead merely establishes the procedure which allows *specific parties* to obtain a right to use water in the State of Wyoming.[1] Because the procedure cited by Goshen and the State of Wyoming does not amount to a general adjudication of water rights, Goshen's and the State of Wyoming's attempt to prevent the United States, and specifically the Bureau of Reclamation, from frustrating that process by imposing additional federal regulatory requirements, i.e., by preventing Casper–Alcova from transferring its water to Goshen despite full compliance with Wyoming law because there was no contract between Goshen and the Bureau of Reclamation, cannot be considered a suit to administer the rights acquired pursuant to such a general adjudication. Accordingly, the court cannot accept Goshen's and the State of Wyoming's contention the McCar-

---

1. In fact, Wyoming's procedure for the general adjudication of water rights is codified at Wyo. Stat. § 1–37–106. *See In re Big Horn River,* 899 P.2d 848, 850 (Wyo.1995); *see also* Ryan H. Childs, *Casenote,* XXXI Land & Water L.Rev. 425 (1996) (discussing history of *Big Horn River* litigation); David W. Edwards, *McCarran Amendment General Adjudications in Wyoming: Threshold Problems,* XVI Land & Water L.Rev. 53 (1981) (describing Wyo.Stat. § 1–37–106, discussing *Big Horn River* litigation under that statute, and noting the legislature enacted § 1–37–106 to provide a general adjudication procedure comporting with the requirements of the McCarran Amendment); W. Michael Kleppinger, *Determination of Federal Water Rights Pursuant to the McCarran Amendment: General Adjudications in Wyoming,* XII Land & Water L.Rev. 457 (1977) (describing Wyo.Stat. § 1–37–106 and noting the legislature enacted it to provide a general adjudication procedure which comported with the requirements of the McCarran Amendment). The case now before this court is in no way a general adjudication of the type authorized under this statute.

ran Amendment amounts to a waiver of sovereign immunity in this case.

### B. *The Reclamation Reform Act*

■ Goshen and the State of Wyoming also contend the Reclamation Reform Act, 43 U.S.C. § 390uu amounts to an express waiver of sovereign immunity in this case. Again, the court begins with the language of the statute. *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527. Section 390uu provides as follows:

Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to this section may be brought in the United States district court in the State in which the land involved is situated.

43 U.S.C. § 390uu. By its plain language, § 390uu applies only in "in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law." This statute waives the United States' sovereign immunity from a declaratory relief action brought by a party to a contract with the United States to establish the party's rights under that contract. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 673–74 (9th Cir.1993); *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285 (8th Cir.1990) (exercising jurisdiction over declaratory relief action but not expressly considering sovereign immunity); *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F.Supp. 715, 745–47 (E.D.Cal.1993) (cited with approval in *Westlands Water*, 10 F.3d at 674). Section 390uu does not waive sovereign immunity from non-contractual claims, such as a claim

for just compensation under the Fifth Amendment, or ostensibly for any other non-contractual statutory or constitutional claim, and "[t]he existence of disputed contracts does not bring [such] claim[s] within the scope of the waiver of immunity provided by Section 390uu." *Sumner Peck Ranch*, 823 F.Supp. at 749; *see Westlands Water Dist. v. United States Dept. of Interior*, 850 F.Supp. 1388, 1410–11 (E.D.Cal.1994).

■ Goshen and the State of Wyoming do not contend they are "contracting entities" within the meaning of § 390uu, and the court sees no basis for such a contention. Instead, they contend Casper–Alcova is a party to a water service contract with the Bureau of Reclamation, and that Goshen became a "beneficiary" of Casper–Alcova's water service contract when it executed the 1989 agreement which is the subject of this suit. Goshen and the State of Wyoming base their entire argument on the statute's legislative history. Specifically, they draw the court's attention to a portion of the Senate Report accompanying § 390uu, which provides:

This section gives the consent of the United States to be sued concerning the contractual rights of persons or entities who are parties *or beneficiaries* of water service or repayment contracts. Repayment contracts between water users and the Secretary are the usual vehicle for the application of acreage limitations to the project lands. Some such contracts have explicit provisions which were questioned by the courts on the grounds that they exceeded the Secretary's authority....

In some instances, written representations were made to the water users concerning the interpretation of the reclamation law or of contract provisions which may have influenced the water users' decision to consummate the contract. This section provides access to the courts for parties *or beneficiaries* seeking to reform such contracts to be in accord with the terms of such representations, or other appropriate relief. The conditions of this permission are clear in the text.

S.Rep. No. 373, 97th Cong.2d Sess. 18 (1982), reprinted in 1982 U.S.C.C.A.N. 2570, 2582 (emphasis added). Goshen and the State of Wyoming also cite portions of the Congressional record containing a discussion of § 390uu:

> [Representative Kazen]: The irrigators strongly urged upon the committee a provision to be placed in the bill which would have validated all of the written representations made to them by any departmental official and would have validated all contract provisions in any contract they had entered into with the Government. The committee felt that such a blanket validation provision would have been wrong. However, the committee did recognize that, in some instances, the contracting district and the people in it might have valid arguments which ought to be considered in the appropriate forum. For this reason, the committee approved an amendment which does no more than give the irrigation districts and their members access to the courts. It is simply a matter of making certain the districts, or individuals who have a contract, may have their day in court. In making these contracts, the Government is acting in a proprietorial capacity and not in a sovereign capacity and there is no reason why it should be permitted to defeat a valid claim by pleading sovereign immunity.

> ....

> [Representative Clausen]: It was presented to me as simply allowing the farmers to actually sue the Federal Government when and where necessary to actually clarify their rights under reclamation law. That was the under standing I had, and I think it has been pretty well verified....

128 Cong.Rec. 8816, 8817 (1982). The court rejects Goshen's and the State of Wyoming's position for the following reasons: First, the United States Supreme Court and the Tenth Circuit have repeated time and time again that when, as in this case, " ' "the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." ' " *United States v. Silvers,* 84 F.3d 1317, 1321 (10th Cir.1996) (quoting *United States v. Floyd,* 81 F.3d 1517, 1523 (10th Cir.1996) (quoting *Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527 (citation and internal quotation marks omitted))). If the court were to accept Goshen's and the State of Wyoming's position, it would ignore the text of § 390uu, which speaks only of "contracting entities," i.e., parties to a contract with the United States, and the court would in effect rewrite the statute to read "[c]onsent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States, *or the rights of any beneficiary of such a contract,* regarding any contract executed pursuant to Federal reclamation law." In the absence of any clearly expressed legislative intent demonstrating Congress intended to waive sovereign immunity and allow parties that have entered into water-lending agreements like the agreement between Goshen and Casper–Alcova, the court will not read such language into § 390uu; indeed, given the absence of any clear and unambiguous legislative history to support Goshen and the State of Wyoming's position, the court simply lacks the authority under the applicable maxims of statutory interpretation. Second, the court's narrow reading is consistent with the unequivocal mandate of the United States Supreme Court that "[w]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed" and "the Government's consent to be sued must be construed strictly in favor of the sovereign." *Nordic Village,* 503 U.S. at 33, 112 S.Ct. at 1014 (citations and internal quotation marks omitted). Third, if the court were to accept Goshen and the State of Wyoming's position, it is difficult to imagine under what circumstances a party entering into an agreement with a "contracting entity" *would not* be able to "join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights" of that "contracting entity" "regarding any contract executed pursuant to Federal reclamation law." In effect, the sky would become the limit to third-parties' ability to sue the United States despite its sovereign

immunity. The court is certain Congress did not intend such a result.

### III

For the reasons stated, the court concludes the United States has not consented to be sued, and, therefore, this court lacks subject matter jurisdiction over Goshen's and the State of Wyoming's action. Accordingly,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss plaintiffs' amended complaint is **GRANTED.** It is further

**ORDERED** that all other pending motions are **DENIED** as moot.